I'm an assistant United States attorney from Spokane, Washington, arguing this case on behalf of the United States. I would like to reserve two minutes for rebuttal. May I do so? Your Honors, this case involves three issues. The district court in this case departed by a total of eight levels, the first issue being a departure based on cultural assimilation and granted a four-level departure. The second departure was basically an unexplained departure of two levels, indicating that it was a combination of factors, although it didn't meet any individual factor. Specifically, the district court rejected all bases for departure under the proffered factors that could have made up the combination of factors. As well as the third departure would be holding that the criminal history points assigned to a traffic conviction did not apply, thereby entitling the defendant to a two-level safety valve departure. In total, the defendant received eight levels of departure, bringing him down to a level of offense, level 19. The court, having departed from the criminal history down to category one, sentenced the defendant to 30 months in prison rather than the range of 78 to 97. Mathematics show cultural assimilation, four levels, combination, four levels, criminal history, two levels. Is that ten, not eight? I believe the second one was only a two-level departure, and for a total of eight. Total of eight. This case, to my knowledge, the issue presented here has not been decided by the Ninth Circuit, and that being application of United States v. Booker, the standard review, to this type of a departure from the guidelines, which now are advisory. Well, I've read your, or at least your office's supplemental brief on Booker, and I'm not quite sure what to make of it. One gets the impression that it really doesn't have any independent impact on this case. Do I read that correctly or not? In application, Booker itself may not have independent impact, and the reason for that is we're still back to the unreasonableness test that the majority of justices of the Supreme Court found in the remedial opinion of Booker, and that being, quote, unreasonableness of the … Well, don't you have a better argument on cultural assimilation? You don't even get to reasonableness, do you, if you apply Lippman? Lippman itself, yes, holds that it applies to 1326 cases. Only? Only, and does not apply. You don't get to a reasonableness test, or do you? I don't want to put words in your mouth. I just want to know where you stand. I don't want to overstate it. I think because of the overlay of the now advisory nature of the guidelines, you can't necessarily say the district courts can't consider things. I think we're still back to Coon, United States v. Coon, the Supreme Court case, and it talks in terms of unreasonableness. Well, you're arguing for a more and more deferential review test, and I don't see how that helps your case. Well, I'm not arguing for that. You're the government. You're appealing the sentence here. I understand that, but we still have to overlay the now advisory nature of the guidelines rather than the mandatory nature of the guidelines. But, as Your Honor recognizes, Booker still holds the appellate test to be unreasonableness, and that was literally the test before Booker was decided. In any event, if you're not calculating the guidelines right, and in this case the safety valve, if you're just throwing out a conviction because the defendant says so orally without any evidence, without any testimony, without any affidavits, without sworn statements, and then thereby departing two levels for the prior conviction and giving the safety valve, you've made a legal error. And as Coon illustrates, Coon says if you make legal errors, those are unreasonable. Those are errors of law that the district court has made. So I guess what I'm saying is you have to properly calculate the guidelines to get a baseline. Booker says you must consult the guidelines. Well, if you consult the guidelines, necessarily you must calculate them correctly in the first instance. Let's focus on the cultural assimilation for a moment. Now, we know what this trial judge thinks is reasonable in light of that, as even you might interpret it here today. We know what the district court thinks of that. We know what the district court thinks is reasonable. Do we not in light of that? Yes, Your Honor. Now, why should we be concerned with that? You say we should be concerned with it as an abstract matter so that whatever the trial judge consults ought to be, whatever the standard is before that court does something different from what is literally required. Is that what it amounts to? Well, yes, Your Honor. I think there's two parts of the unreasonableness test. First of all, you have to have a baseline, so you have to correctly calculate the guidelines. Second of all, the extent of that departure has to be reasonable, and that's the test. At least for the time being, we know what this court thinks is reasonable. That's pretty clear from this record. Yes. Thinking that anything other than what was done is grossly irrational almost, right? In terms of the district court's opinion, yes. Now, we start with that, and we – and I would be amazed if the district court, given an opportunity to reconsider it in light of what you say is the appropriate guideline, would do anything different from what has already been done, because it has been made abundantly clear that that's what the district court thinks is reasonable. Yes, Your Honor. I agree. And I think it needs direction from this court, because we also know what the Ninth Circuit says is an appropriate and reasonable departure based on Lippman, and Lippman does not apply to a drug crime. In effect, you're giving a non-citizen a free ticket to committing crimes in this district because he can be treated more lenient than a non-citizen. So that this court, in effect, has said it's unreasonable to extend the cultural assimilation. But the court, I think, looked at this more not from a standpoint of what the motives might have been for committing the crime, like we do on illegal reentry in the cultural assimilation cases, but I suspect looked at more – looked more at what the consequences are to this defendant, the deportation. And it's the government's position that that is unreasonable for this reason. That's unreasonable as a matter of law. You're treating socioeconomic people different. You're treating citizens and non-citizens different. That's wrong. There's a disparity in sentencing. A public corruption case, you'd say, well, a mayor of a city that got convicted, he's going to lose his office. Geez, that's enough punishment in and of itself. He shouldn't go to jail. But in this case, we do not say in advance that the court couldn't factor that in under the guise of reasonableness in a future sentence. We don't have to say that. All we have to say, if you're right, all we have to say is that the court should have started from a different baseline. But the government's asking you to also say that these factors, these – and if you will, it should be a prohibited factor. But you can't take a non-citizen and say collateral matters outside the sentencing. For instance, a public corruption case, a mayor that loses his job after a conviction, well, that's a collateral matter. He can't vote and he's really interested in voting. Then you go beyond what the Sentencing Reform Act intended and you start discriminating, if you will, on socioeconomic, on class of citizens. But that's another case. Well, not exactly because we have a non-citizen committing a drug crime not because he came to this country but for economic reasons, to make money. And that's this crime. Drug crimes are to make money. But I would have difficulty in telling the court anything more than where it can start from. Your initial argument is that we've got to know what the baseline is. That's the first step. But Booker also says then the ultimate test is reasonableness. I know. But unless we're going to – well, unless we're going to take the step that renders this case almost moot by saying now we know what the Court thinks is reasonable and go from there, anyway, I think you've answered my question. Thank you.  You have consumed all your time. Thank you, counsel. We'll now hear from Mr. Trejo. Is that right? Yes, Your Honor. May it please the Court. My name is George Trejo, Jr., and I'm here on behalf of the appellee, Jose Mojica. Under Booker, courts must treat the guidelines as just one of a number of sentencing factors. Section 3553A requires the courts to, quote, to comply with the purposes set forth in paragraph 2. Section 3553A.2 states that such purposes are, one, to reflect the seriousness of the offense, two, to afford adequate deterrence to criminal conduct, three, to protect the public from further crimes. Now, when we look at those two, the adequate deterrence to criminal conduct and to the extent to which the defendant is subject to deportation. I think it's important to note that Mr. Mojica's report at excerpt of record page 32 fully went into depth with the defendant and explained to him what would happen if he were to return after being deported. There's no doubt that Mr. Mojica, under the facts of this case, under the state of the law, will be subject to deportation, without a doubt. Well, one of the problems, of course, is we have the Lipman case, which seems to suggest that cultural assimilation is limited only to 1326 cases, where there is a relation to the motive. Here, there is no – there's nothing equivalent to that. Obviously, Judge Shea wanted to reduce the sentence for perhaps a totality of reasons, but to the extent that he specifically identifies this issue, don't we have the Lipman case that's a problem? Well, we would ask the Court to extend Lipman to other situations other than just 1326 cases. Can we do that after we've decided Alvarez-Cardenas? Oh, the Court – Does Alvarez-Cardenas hold the other way? That's correct, Your Honor, but the Court always has the authority to reexamine not this panel, maybe an in-bank panel. Right. So I understand our jurisprudence, and I have to be the new boy on the block, but we can't do that. But even if you can't, I think putting Lipman to the side, we can still examine the record below and determine that under 3553, the Court's decision to depart was still reasonable. All right. Now I think you're on stronger ground, and what would you offer as the basis for reasonableness? Well, the basis for reasonableness on that departure is multifold. Multifold. The adequate deterrence to criminal conduct to protect the public. Well, this individual, unlike a United States citizen, this individual is forever barred from even entering the United States. His mere presence here in the United States, absent committing any additional criminal conduct whatsoever, would subject him to 41 months incarceration immediately, at the low end of the advisory guideline range now. The public is going to be protected because he does not have a separate substantive of should he return from Mexico to the United States. In other words, if we send this back, Judge Shea could, by reformulating the rationale for his departure, come back with essentially the same sentence but without violating Lipman. Is that essentially your argument? In fact, Your Honor, I think I could go one step further and say that Judge Shea could also consider a number of the prohibited factors pre-Booker under the guidelines and even impose a lesser sentence and still be reasonable. Because under the guidelines before, we were generally prohibited to consider a number of factors under the 5H 1.1 et al. criteria. And now, under the 3553A1 requirement that the court evaluate the history and characteristics of a particular defendant, I think he's now entitled, and lower courts are now entitled to examine those factors and say a reasonable sentence including these factors could even go below what Judge Shea imposed in this particular case. Well, what does cultural assimilation have to do with any of that? Well, I think it goes to, for example, under 5H 1.1, the defendant's age. 5H 1.2 is education. Go ahead. I'm sorry. His education, his vocational skills, his family ties, his socioeconomic status, his concerns. Yeah, but he could have all of those things and be a recent arrival. Well. He could have all of those things and be a U.S. native-born citizen who's never left the country. That's right. And the citizen would have the benefit of a reasonable sentence that includes consideration of these previously prohibited factors. What does cultural assimilation have to do with that? We're all culturally assimilated, aren't we? Now, if I go in front of the court and I'm convicted of some crime and I say I'm culturally assimilated, I've lived here all my life, Judge. I've lived here. I'm culturally assimilated. You are, Your Honor. I'm not going to be deported or any of those things, but I'm culturally assimilated. Now, go way down on this sentence because I'm culturally assimilated. Now, the next guy that comes in there, he may be an illegal alien. And he's got family and he's got education and he's got this and he has that and the other thing and so on, and he doesn't get cultural assimilation, I take it, because he's a recent arrival. Now, what does cultural assimilation have to do with all of this? Isn't it a red herring? I don't believe so, Your Honor. I think because we look at each and every individual that appears before a lower court for particular unique facts as to their background, their upbringing, and in that regard, this situation here involving Mr. Mojica is tragic and unique. Tragic in the sense that here we have an individual who, before he even turned one-year-old, was brought to the United States and since that time has never left this country. He has been here in the United States the entire time, doesn't even know Mexico, and as a result of this conviction, will be deported. And not only be deported, but while he's incarcerated, he's not going to be able to receive the benefits that a United States citizen individual receives during the course of their incarceration. Given this offense, he'd also be subjected to a higher level of security prison and not the minimum security prison that a U.S. citizen would have enjoyed. I think what I'm getting at is that has to do with the consequences, and I don't have any quarrel with that. Okay. But you put it under the label of cultural assimilation, and it's meaningless. That's what I'm trying to figure out. Okay. If we take the label cultural assimilation away. Yeah. And then let's say I would argue to the court that the district court's sentence still remains reasonable in considering all the different issues. That's a different issue. Right? Right. Okay. Right. So one way or another, bottom line, we're just seeking that the judge's sentence was reasonable. Now, the government is saying that whatever the court winds up with as a reasonable sentence, it ought to start from the right place. And that right place ought to be an adequate or an accurate understanding of the guideline. That's all. And this court clearly did not. Right. And we don't have a problem going back to the district court because now under post-Booker, we believe that we're entitled to argue for a further departure utilizing other aspects that the district court was previously forbidden from even considering. Yeah. Okay. No quarrel with that. But that's a different case. Okay. All right. All right. Let's see. The sentence imposed by the district court was sufficient and not greater than necessary to comply with the purposes of sentencing as directed under the statute. Counsel, let me ask you about this driving without a license conviction. Sure. Didn't the judge get that one wrong because there is in fact, is there not, a signed form indicating that this individual? Yes. Two things on that, Your Honor. It may, when we look at excerpt of record 121 and we look at this signed form in detail, it says, it's a handwritten form. It says, I'm charged with NOL. The elements are D something, unlegible, W, L, O, DL, and WID. The district court in examining that form commented that, at excerpt of record 85, that forms are often at times unintentionally obtuse, vague, or mistaken. Well, everybody knows what a DUI is and presumably a DOL. But a 17-year-old kid who's in court by himself without an attorney, does that person know? And I think that's why the district court was within its discretion. But there's no evidence in this record to say that he did not. The proffer was. Now, the proffer, we made a proffer at the district court level. The government never objected at the district court level to our proffer. And now they're coming back and saying there was no evidence, no affidavit. And we think that's inappropriate. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Leavy, Bea